**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

LUV N' CARE, LTD.                                    Civil Action No.: 3:16-cv-00641

      *Plaintiff,*

   v.

MICHAEL L. McGINLEY and S.C.                 **JURY TRIAL DEMANDED**
PRODUCTS, INC.

      *Defendants.*

## COMPLAINT FOR UNFAIR COMPETITION AND DECLARATORY JUDGMENT

This is an action seeking an injunction and damages for defendants' acts of unfair competition associated with the manufacture, distribution and sale of rinse pails and seeks a declaration that plaintiff violates no valid patent right of defendants.  Rinse pails are used to rinse the heads of toddlers at bath time.  Defendants, who have acted jointly as a single business enterprise, have knocked-off plaintiff's innovative, elegant and attractive rinse pail design, and then used photographs of the knock-off rinse pail to compete unfairly with plaintiff in a classic bait-and-switch scheme.  Defendants have also created web advertisements falsely describing the availability of its knock-off product.  Finally, defendants have falsely accused plaintiff of infringing a patent they know does not cover plaintiff's rinse pail product.  In order for defendants to obtain their rinse pail patents from the U.S. Patent Office, they had to repeatedly narrow the scope of their patents to a very specific rinse pail design to avoid the prior art – a design not used by plaintiff.  Defendants know their patents do not cover plaintiff's rinse pail, yet they are attempting to threaten and intimidate plaintiff by wrongly accusing plaintiff of

infringement.  These acts by defendants have caused and will continue to cause grave injury and damage to plaintiff unless enjoined by this Court.

## THE PARTIES

1.      Plaintiff Luv n' care, Ltd. (LNC), is a Louisiana corporation having its principal place of business in Monroe, Louisiana.

2.      Defendant S.C. Products (SCP), is a Missouri corporation having its principal place of business located at 4010 Washington Street, Suite 201, Kansas City, Missouri 64111.

3.      Defendant Michael L. McGinley (McGinley) is an individual residing in Prairie Village, Kansas, and upon information and belief is an officer, director and the controlling party of defendant SCP.

4.      Upon information and belief, at all times relevant to the acts and omissions forming the basis of this action, SCP and McGinley ("Defendants") have operated as a single business enterprise under Louisiana Law.

## NATURE OF THE ACTION, JURISDICTION AND VENUE

5.      This is a civil action seeking damages and injunctive relief for trade dress infringement, false advertising, false representation and unfair competition under the Lanham Act, 15 U.S.C. §§ 1051, *et seq.*, and under the Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, *et seq.*, together with a Declaratory Judgment action under 28 U.S.C. §§ 2201 and 2202 seeking a declaration that Plaintiff violates no valid patent right of Defendants.

6.      The Court has jurisdiction over the claims in this action pursuant to (i) 28 U.S.C. § 1331 because the action arises under the trademark and patent laws of the United States, (ii) 28 U.S.C. § 1332(a)(1) because the matter exceeds the sum or value of $75,000, exclusive of

interests and costs, and is a controversy between citizens of different states, the plaintiff being a citizen of the State of Louisiana, the corporate defendant being a citizen of the State of Missouri, and the individual defendant being a citizen of the State of Kansas, (iii) the Declaratory Judgment Act, 28 U.S.C. §2201 and 2202, in that this action is based in part on an actual case and controversy between the parties regarding the alleged non-infringement and unenforceability of two of Defendants' Rinse Pail Patents, and (iv) 28 U.S.C. § 1338 (a) and (b) because this is an action arising under the Lanham Act, an Act of Congress relating to trademarks, and the Patent Statutes, 35 U.S.C. §§ 101, *et seq*., and the assertion of the Louisiana unfair competition claim is joined with a substantial and related claim under the Trademark Laws of the United States.

7.     The Court has personal jurisdiction over the Defendants because (i) Plaintiff LNC's claims arise in whole or in part out of Defendants' purposeful, intentional, regular, systematic and continuous conduct, including the marketing and selling of products that are the subject of this action and directed threatening statements to LNC, in Louisiana, (ii) manufacturing and placing defendants' rinse pail product, including the rinse pail knock-off product at the center of defendants' bait-and-switch scheme, into the stream of commerce with the foreseeability, realization, expectation, or anticipation that defendants' knock-off rinse pail and/or original inferior rinse pail, in defendants' bait-and-switch scheme, may eventually be marketed, found, purchased and/or shipped to customers residing in Louisiana by reason of its nature and defendants unlawful marketing practices, (iii) having purposefully directed their unlawful activities against citizens of Louisiana including LNC, a corporation incorporated and having its principal place of business in Louisiana, and, thereby, causing injury or damage in Louisiana, and (iv) Defendants have sufficient minimum contacts within this jurisdiction such that exercising personal jurisdiction over them would not offend traditional notions of fair play

and substantial justice.  Defendants may be served under the Louisiana Long Arm Statute.  La. R.S. § 13:3201.

8.      Venue in the Western District of Louisiana is proper under 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims occurred within the territory of the Western District of Louisiana and there is no other district in which the action may be brought as the defendants are citizens of different states.

## FACTS

9.      LNC was founded in Monroe, Louisiana by Eddie Hakim who, in the 1980's, invented and commercialized a revolutionary no-spill cup.  Both before and since that time, LNC has continued as a designer and seller of innovative, high quality attractive products for babies and small children.  Based on its innovative, high quality and attractive designs, LNC is now known as one of the leading baby product companies in the world.  LNC's headquarters are in Monroe, Louisiana, where it conducts most of its business, maintains its corporate books and records, and where its officers and directors are located.

10.     LNC's products are sold in the United States, including the territory of the Western District of Louisiana, by major retailers such as Wal-Mart, Toys "R" Us, Babies "R" Us, Target and others.  LNC's products are also resold by others through online retailers such as Amazon.com.  LNC's products are also available in some 150 foreign countries.

11.     LNC enjoys a good reputation with consumers, both in the United States and internationally, for innovative, high quality and attractive product designs.

12.     LNC's products are among the most popular and well known products in the baby products industry and those products are famous throughout the United States and worldwide.

4

13.     LNC products are purchased and sold by independent retailers in interstate and international commerce under various registered and common law trademarks including the mark NUBY.

14.     On March 28, 2000, United States Trademark Registration No. 2,335,700 for the mark NUBY was duly and lawfully issued by the United States Patent and Trademark Office ("USPTO").  The NUBY trademark registration is valid and subsisting.  Pursuant to 15 U.S.C. § 1065, the NUBY trademark registration has been deemed incontestable by the USPTO.

15.     LNC is a licensee of the NUBY mark.

16.     The NUBY mark is a distinctive symbol which serves as the predominant trademark for LNC's products promoted and sold in the United States and throughout the world.

17.     The appearance of LNC's products, packaging, and the NUBY mark are distinctive symbols, which serve as trademarks for LNC's products in the United States and throughout the world.

18.     As a result of LNC's long term, continuous and extensive use of the NUBY mark, it has acquired common law rights to that mark for the products to which it has been applied.

19.     LNC uses the NUBY mark on a wide variety of baby and children's products sold in the United States including rinse pails.

20.     LNC's long term, continuous and extensive use of the NUBY mark on innovative, high quality and attractive products, including rinse pails, has generated substantial good will for LNC associated with the NUBY mark.

21.     As a result of LNC's innovative and attractive designs, together with an uncompromising commitment to high quality and consumer safety, extensive promotional activities by independent retailers together with its widespread and substantial sales, LNC's

products, packaging and the NUBY mark have all become widely known throughout the United States and worldwide, and have become directly associated with LNC as a source of innovative, attractive, safe, and high quality products.

22.     The NUBY mark is a famous mark.

23.     The NUBY mark, the appearance of LNC's products, and their product configurations, together with the associated packaging, are distinctive, have all become very well known, have accrued secondary meaning, and are recognized as identifying LNC as the sole source of its products.  Consumers have come to associate LNC's innovative and distinctive rinse pail product configuration solely and exclusively with LNC.

24.     SCP purports to be a Missouri corporation located in Kansas City, Missouri.

25.     McGinley purports to be a Kansas resident, and upon information and belief, is an officer and director of defendant SCP and the owner of the patents at issue in the declaratory judgment action.

26.     McGinley and SCP have engaged in a joint venture and enterprise to unlawfully and unfairly compete with LNC in the sale of rinse pails.  Upon information and belief, McGinley dominates and controls SCP and uses SCP for his own personal pecuniary gain.  Also, upon information and belief and following a reasonable opportunity to conduct discovery, McGinley has directly and through SCP engaged in unlawful and improper conduct by committing acts of fraud and inequitable conduct on the USPTO during the prosecution of the rinse pail patents.  McGinley and SCP's acts of inequitable conduct and fraud on the USPTO have directly caused injury and loss to LNC.  Upon further information and belief, McGinley has used SCP as a conduit to funnel ill-gotten gains from SCP to himself.  SCP and McGinley

operate as a single business enterprise under Louisiana Law, all of which will be more thoroughly established following a reasonable opportunity to conduct discovery.

27.     In February 4, 2003, McGinley and Brian Lau filed a patent application with the USPTO for an alleged invention to a FLEXIBLE PANEL PITCHER.   The application was assigned Serial No. 10/357,651 ('651 Application).

28.     The '651 Application included four figures on two sheets of drawings allegedly describing pictorially McGinley and Lau's alleged invention.   Each of the figures in the '651 Application depicted a rinse pail without a divider located in the interior of the rinse pail.

29.     The '651 Application was examined by an Examiner at the USPTO, who found the alleged invention to be unpatentable.   Despite McGinley and Lau's efforts to convince the USPTO Examiner that the invention was patentable, the USPTO continued to maintain its objection to the patentability of the alleged invention described in the '651 Application.

30.     On February 2, 2004, McGinley and Lau expressly abandoned the '651 Application in the USPTO in the face of the USPTO's continued refusal to find the alleged invention of the '651 Application patentable.   The effect of that express abandonment was to place in the public domain any alleged invention described in the '651 Application.

31.     Also on February 2, 2004, McGinley and Lau filed a new continuation-in-part application adding figures and text describing a rinse pail now including a divider located in the interior of the rinse pail.   The application was assigned Serial No. 10/770,325 ('325 Application).

32.     McGinley and Lau prosecuted the '325 Application for over four years and were finally issued a patent once they agreed to expressly limit their pending claims to a "container" (rinse pail) that included a divider located in the interior of the rinse pail.   The '325 Application

issued on October 28, 2008, as U.S. Patent No. 7,441,675 ('675 patent) with twelve claims each requiring a divider "spanning said interior and contacting said bottom."

33.     On September 5, 2007, McGinley and Lau filed another continuation-in-part application further elaborating on the divider feature of the rinse pail.  The application was assigned Serial No. 11/850,476 ('476 Application).

34.     McGinley and Lau prosecuted the '476 Application for almost three years and were finally issued a patent once they agreed to again expressly limit their pending claims to a "container" (rinse pail) that now included a curved divider as shown.  The '476 Application issued on July 20, 2010, as U.S. Patent No. 7,757,895 ('895 patent) with ten claims each requiring a "curved divider."

35.     On October 22, 2008, McGinley and Lau filed yet another continuation-in-part application again claiming various aspects of the divider feature of the rinse pail.   The application was assigned Serial No. 12/255,797 ('797 Application).

36.     On February 19, 2009, the '797 Application was published with fourteen claims, all directed to a container (rinse pail) with a divider.

37.     The USPTO Examiner evaluating the '797 Application initially refused to allow the application on the basis that the proposed claims were drawn to the same invention as previously claimed in the '675 patent.  This is known as a Double Patenting rejection.

38.     Despite the fact that the '797 Application was filed in the names of McGinley and Lau, on February 27, 2010, McGinley, acting unilaterally, attempted to overcome the Examiner's Double Patenting rejection by submitting a "terminal disclaimer" disclaiming that portion of the term of any patent issuing on the '797 Application that would extend beyond the expiration of the '675 patent.

39.     Also on February 27, 2010, McGinley and Lau filed an amendment with a new set of claims.  In that amendment, McGinley and Lau told the USPTO Examiner that the new set of claims "distinguished . . . over each of the previously submitted prior art references."  They did not, however, tell the Examiner that the new set of claims did not include a divider.

40.     Nowhere in the file of the '797 Application is there any record of the applicants McGinley and Lau, or their attorney, informing the USPTO Examiner that six years earlier they had expressly abandoned the '651 Application and the alleged invention to an undivided rinse pail.

41.     The USPTO Examiner who was charged with reviewing the '797 Application was not the same USPTO Examiner who handled the '651 Application filed back on February 4, 2003 and, upon information and belief, he was unaware of the one page Express Abandonment document buried in the six year old file that was now almost 400 pages thick.

42.     Nowhere in the amendment filed on February 27, 2010, did McGinley or Lau tell the USPTO or the Examiner that the newly submitted claims now omitted the divider limitations that had been required since the Express Abandonment of the '651 Application and were required in order to obtain issuance of the preceding '675 patent and the '895 patent.

43.     On January 28, 2014, as a direct result of McGinley and Lau's material omissions, the '797 Application was allowed to issue with ten claims to a container (rinse pail) without a divider.  The USPTO Examiner had required, however, that each of the claims had to include limitations to a "generally flat sidewall" and a "generally flat flexible panel forming a portion of the generally flat sidewall."

44.     Sometime prior to March 2012, SCP began selling a rinse pail it calls a Shampoo Rinse Cup.  The original version of the SCP Shampoo Rinse Cup was poorly constructed

unattractively boxy with harsh blunt corners, a generally flat front face and a divider.  Because of the divider, the SCP Shampoo Rinse Cup could not be stacked.  Upon information and belief, the original SCP Shampoo Rinse Cup was not a successful product.

45.    At some time prior to March 2012, LNC became aware of the original SCP Shampoo Rinse Cup and reached the conclusion that a better designed, more attractive, rinse pail had the potential to become a successful product.  Before undertaking a new product design effort, LNC conducted an investigation to determine to what extent, if any, there were patents that might limit LNC's design efforts.

46.    That investigation uncovered the '651 Application, the '675 and '895 patents and the published '797 Application.  After a careful investigation, it was determined that an undivided rinse pail was in the public domain.  The basis for this determination was (i) the express abandonment of the '651 Application directed to an undivided rinse pail, (ii) the express requirement of a divider limitation included in all the claims of both the '675 and '895 patents and the '797 Application, and (iii) the extensive prosecution history of the '675 and '895 patents detailing the requirement for the divider limitation in order to be patentable.

47.    LNC then designed an innovative and elegant rinse pail having graceful curves with no blunt corners and no divider – it was both attractive and, unlike the SCP Shampoo Rinse Cup, it could be stacked.

48.    The LNC rinse pail, known as the Nûby Tear-Free Rinse Pail, was introduced in March 2012 and quickly became a successful product with LNC selling almost 170,000 units as of the date of this complaint.

49.    Having failed in the marketplace and unable to compete fairly with LNC, McGinley and SCP, acting as one, upon information and belief, conspired together to hatch a

scheme to trick consumers into purchasing the original SCP Shampoo Rinse Cup by copying LNC's rinse pail including its distinctive product configuration trade dress, offering that knock-off copy to consumers intending those consumers to think the knock-off was the LNC rinse pail, then in a classic bait-and-switch operation, actually delivered the original SCP Shampoo Rinse Cup to those who ordered the knock-off copy.  At the same time, Defendants began threatening and attempting to intimidate LNC with expensive patent litigation in an effort to exclude LNC's superior rinse pail from the market.

50.    Upon information and belief, SCP, operating together as a single business enterprise or alternatively acting as an instrumentality of McGinley, copied LNC's elegant and attractive rinse pail creating a knock-off rinse pail product.  In contrast to the original SCP Shampoo Rinse Cup, the copying of LNC's rinse cup product included the ability to be stacked. SCP then uses the knock-off rinse pail to lure consumers to various e-commerce sites where SCP purports to offer the knock-off product for sale.  Upon information and belief, consumers who see SCP's knock-off rinse pail are likely to be confused into believing they are being offered the LNC rinse pail.  Then, when a consumer orders the SCP knock-off, SCP pulls a bait-and-switch and delivers the original SCP Shampoo Rinse Cup!

51.    Not only is the product delivered to the consumer not what the consumer ordered, but it is an inferior, low quality product that is poorly constructed and is unattractive.  A consumer who receives SCP's inferior, low quality, unattractive product, thinking it to be associated with LNC, is likely to associate the inferior, low quality, unattractive product with LNC potentially damaging LNC's reputation.  There is also a risk that post purchase consumers who see or acquire SCP's inferior, low quality, unattractive product thinking it to be in some way associated with LNC are likely to associate the inferior, low quality, unattractive product with

LNC potentially damaging LNC's reputation with respect to the rinse pail but also to other LNC products as well.

52.     SCP claims it sells its SCP Shampoo Rinse Cup throughout the United States and the Western District of Louisiana through various retailers including Bed Bath & Beyond, Wal-Mart, buybuy Baby, and Baby Depot.  SCP's Shampoo Rinse Cup is also offered for sale on Amazon.com throughout the United States and the Western District of Louisiana.

53.     SCP also advertises and promotes SCP Shampoo Rinse Cup on its own website: www.scproducts.net.  SCP's website is accessible throughout the United States including the Western District of Louisiana.  SCP's website also promotes a "Stackable Shampoo Rinse Cup" that is a knock-off of LNC's rinse pail.

54.     On its website, SCP states in its advertising "Find our Products at these stores and web sites."  The websites listed are Bed Bath & Beyond, Wal-Mart, buybuy Baby and Baby Depot.  The implication of the statement is that a potential customer can purchase the SCP Shampoo Rinse Cup from any of the four listed retailers.  Upon information and belief, this statement is literally false.  Upon further information and belief, the SCP Shampoo Rinse Cup is not available from either Wal-Mart or Baby Depot and what's actually offered by Bed Bath & Beyond and buybuy Baby is not what is sold or delivered.

55.     When a potential customer performs a search for the SCP Shampoo Rinse Cup on the Wal-Mart website, the Wal-Mart site displays a notice that "This item is no longer available. We're unable to show you buying options for this item."

56.     When a potential customer performs a search for the SCP Shampoo Rinse Cup on the Baby Depot website, a search panel is displayed but no product is shown.   When the consumer searches for a rinse cup, LNC's rinse pail is offered.

57.    Despite SCP's representations that its products are at the stores and websites of Bed Bath & Beyond, Wal-Mart, buybuy Baby and Baby Depot, upon information and belief, the product is not at the stores or websites of Wal-Mart and Baby Depot making the statement literally false.

58.    Both product sellers and consumers view a product's availability from a major retailer such as Bed Bath & Beyond, Wal-Mart, buybuy Baby and Baby Depot as validation for the product.  Upon information and belief, SCP falsely advertises its SCP Shampoo Rinse Cup product's availability on the stores and websites of Wal-Mart and Baby Depot as a way to build product validation and induce potential customers to purchase the SCP Shampoo Rinse Cup instead of LNC's rinse pail.  Upon information and belief, SCP's false advertising has the effect of directing and enticing LNC's customers into buying the SCP Shampoo Rinse Cup.  LNC is damaged by SCP's false advertising statement.

59.    SCP's false advertising statement together with its copying of LNC's rinse pail design has damaged LNC by falsely suggesting to the consuming public that SCP has some proprietary right in an undivided rinse pail.

60.    SCP's Shampoo Rinse Cup is sold in the United States in the same channels of trade as LNC's NUBY branded rinse pail and in fact, the two products are often offered side-by-side on the same web page.  SCP's Shampoo Rinse Cup competes directly with LNC's NUBY branded rinse pail.

61.    A consumer considering the purchase of a NUBY branded rinse pail is likely to be presented with SCP's Shampoo Rinse Cup as an alternative or competing product.

62.    SCP's advertising and promotional material featuring the prominent false claim that it is available at Wal-Mart and Baby Depot is likely to attract the attention of consumers

seeking to purchase a rinse pail.  For those consumers seeking to purchase a rinse pail from a validated seller, SCP's false statement is likely to persuade that consumer to purchase the SCP Shampoo Rinse Cup instead of the NUBY branded rinse pail.

63.    SCP's false statements also create a substantial risk of reputational damage to LNC because consumers seeing SCP's false claim are likely to question LNC's innovativeness, potentially diminishing LNC's highly valuable NUBY brand.

64.    Upon information and belief, Defendant SCP's conduct is willful, deliberate, intentional and in bad faith.

65.    Upon information and belief, consumers who would have purchased LNC's NUBY branded rinse pail instead purchased SCP's Shampoo Rinse Cup.  But for SCP's unlawful conduct, at least a portion of SCP's sales would have been LNC's sales.

66.    The damage to LNC's NUBY brand caused by SCP's false representation is incalculable and irreparable.

67.    LNC respectfully requests an immediate halt to SCP's false statements, claims and representations.

68.    Defendant McGinley purports to be the owner of the '675 patent, the '895 patent and the '178 patent.  Upon information and belief, Defendant McGinley calls these patents his Rinse Cup Patents.

69.    SCP purports to be the exclusive licensee of the Rinse Cup Patents.

70.    Defendants McGinley and SCP have threatened LNC in writing by "formally" notifying LNC of its "Rinse Cup Patents and demanding that LNC immediately cease and desist from infringing the '178 Patent" in a letter dated April 1, 2014.

71.     On March 30, 2016, Defendants McGinley and SCP sued LNC for infringement of the '178 patent in the United States District Court for the Western District of Missouri.

72.     In their complaint against LNC, Defendants McGinley and SCP have also made allegations with respect to the '675 patent.

73.     Defendant McGinley has verbally accused LNC of infringing his Rinse Pail Patents including the '675 and '895 patents.

74.     Upon information and belief, Defendant McGinley has verbally accused LNC's customers of infringing his Rinse Pail Patents including the '675 and '895 patents.

75.     Defendants McGinley and SCP, acting as a single business enterprise, have a history of filing patent infringement suits seeking to enforce several of their Rinse Pail Patents and sued LNC with respect to one of those patents.  Based on direct communications between LNC and Defendants together with Defendants' litigation history, LNC has a reasonable and immediate apprehension of suit in that it or its customers, or both, will face claims of infringement of the '675 and '895 patents if LNC continues to import into the US, offer for sale and sell rinse pails.  Thus an actual, substantial controversy exists of immediate and sufficient scope so as to warrant a Declaratory Judgment.

76.     At all times pertinent to this matter, upon information and belief, SCP has been under the direct control of McGinley and all its actions have been at his behest and direction. Upon information and belief, McGinley and SCP constitute a single business enterprise under Louisiana Law with McGinley as the dominant parent entity.  As such, the Court should disregard the allegedly separate identities of McGinley and SCP and hold them jointly and severely liable for one another's unlawful acts as alleged herein.

## FIRST CLAIM FOR RELIEF – TRADE DRESS INFRINGEMENT
### (Lanham Act Violation, 15 U.S.C. § 1125(a))

77.     Plaintiff LNC repeats and realleges each and every allegation contained in the foregoing paragraphs 1 through 76 as if fully set forth herein.

78.     LNC designed and created a unique, innovative, attractive and distinctive rinse pail having a product configuration that functions as trade dress.

79.     Through substantial marketing efforts including extensive promotion, advertising and sales by independent retailers, LNC's rinse pail product configuration has acquired secondary meaning and has become in the minds of the relevant consuming public an indicator of origin associated solely and exclusively with LNC.

80.     Defendants have created a knock-off copy of LNC's distinctive rinse pail product configuration without authority or permission from LNC.

81.     Defendants' advertising, promotion, marketing, offer for sale and sale over the internet of a rinse pail that adopts the distinctive product configuration of LNC's rinse pail are broadcast throughout the United States including the Western District of Louisiana.   Upon information and belief, Defendants have sold their knock-off copies of LNC's rinse pail with its distinctive product configuration in the Western District of Louisiana.

82.     Defendants' use of confusingly similar knock-off copies of LNC's rinse pail product configuration trade dress is likely to cause confusion, deception, or to cause mistake by creating the false and misleading impression that Defendants' confusingly similar knock-off product is manufactured or distributed by LNC, or is associated or connected with LNC, or have the sponsorship, endorsement or approval of LNC.

83.     Defendants have used confusingly similar knock-off product configuration trade dress similar to LNC's trade dress in violation of 15 U.S.C. § 1125(a).   Defendants' activities

have caused and unless enjoined by this Court will continue to cause a likelihood of confusion and deception of members of the consuming public, and, additionally, injury to LNC's goodwill and reputation as symbolized by the LNC trade dress, for which LNC has no adequate remedy at law.

84. Defendants' actions demonstrate an intentional, willful and malicious intent to trade on the goodwill associated with the LNC trade dress to LNC's great and irreparable harm.

85. Unless enjoined, Defendants have caused and are likely to continue causing substantial injury to the consuming public and to LNC's business reputation and goodwill which damage is irreparable and cannot be adequately compensated by money damages entitling LNC to entry of preliminary and permanent injunctive relief.

86. LNC is also entitled to recover Defendants' profits, actual damages, enhanced profits and damages, costs, and reasonable attorneys' fees.

## SECOND CLAIM FOR RELIEF – FALSE ADVERTISING
### (Lanham Act Violation, 15 U.S.C. § 1125(a))

87. Plaintiff LNC repeats and realleges each and every allegation contained in the foregoing paragraphs 1 through 86 as if fully set forth herein.

88. Defendants sell their SCP Shampoo Rinse Cup in interstate commerce.

89. Defendants market and promote the SCP Shampoo Rinse Cup using promotional material and advertising that contain the statement to the effect that the SCP Shampoo Rinse Cup can be purchased on the Wal-Mart and Baby Depot websites.

90. The SCP Shampoo Rinse Cup cannot be purchased on the Wal-Mart or Baby Depot websites and upon information and belief cannot be purchased at Wal-Mart or Baby Depot stores.

91. Defendant SCP's statement and claim is literally false and misleading.

92.     Upon information and belief, SCP's false statement is likely to deceive or confuse consumers concerning an important material fact considered by consumers in deciding which brand of rinse pail to purchase.

93.     Upon information and belief, this deceptive conduct by Defendants is and has been deliberate, and has injured and continues to injure LNC and consumers.

94.     Defendants know or should know that their statement regarding the rinse cup availability is false and misleading.

95.     Plaintiff LNC has been and continues to be damaged by Defendants' false statements and claims made in their advertising and promotional materials, including through direct diversion of sales from LNC to Defendants and the lessening of the goodwill that LNC enjoys among the buying public.

96.     Plaintiff LNC has no adequate remedy at law to redress these injuries and is entitled to preliminary and permanent injunctive relief.

## THIRD CLAIM FOR RELIEF – FALSE REPRESENTATION
### (Lanham Act Violation, 15 U.S.C. § 1125(a))

97.     Plaintiff LNC repeats and realleges each and every allegation contained in the foregoing paragraphs 1 through 96 as if fully set forth herein.

98.     LNC designed and created a unique and innovative superior rinse pail having a distinctive product configuration that functions as trade dress.

99.     Through substantial marketing, promotion and advertising by retailers, the product configuration of LNC's rinse pail has acquired secondary meaning and has become in the minds of the relevant consuming public an indicator of origin associated with LNC.

100.    Defendants have created a knock-off copy of LNC's distinctive rinse pail without authority or permission from LNC.

101.   Defendants advertise and offer for sale over the internet a rinse cup that adopts the distinctive product configuration of LNC's rinse pail.  Defendants' advertisements and offers for sale are broadcast over the internet throughout the United States including the Western District of Louisiana.

102.   Consumers ordering Defendants' knock-off copy of LNC's rinse pail product configuration are likely to be confused into believing they are ordering LNC's rinse pail when in fact they are ordering the knock-off copy.  Consumers are then further confused by Defendants' bait-and-switch delivery of the original SCP Shampoo Rinse Cup.  Defendants' conduct constitutes a false representation of its goods.

103.   Upon information and belief, Defendants' conduct is willful, deliberate, intentional and in bad faith.

104.   Upon information and belief, consumers who would have purchased LNC's NUBY branded rinse pail instead purchased Defendants' Shampoo Rinse Cup.  But for Defendants' unlawful conduct, at least a portion of Defendants' sales would have been LNC's sales.

105.   By reason of the foregoing acts, Defendant has caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff LNC.

106.   Plaintiff LNC has no adequate remedy at law to address these injuries.

### FOURTH CLAIM FOR RELIEF
### (Violation of Louisiana Unfair Trade Practices and Consumer Protection Law , La. R.S. 51:1401, *et seq.* )

107.   Plaintiff LNC repeats and realleges each and every allegation contained in the foregoing paragraphs 1 through 106 as fully set forth herein.

108.    Defendants' infringement of LNC's distinctive trade dress, false advertising and bait-and-switch misrepresentation as detailed herein constitute unfair and deceptive practices prohibited by the Louisiana Unfair Trade Practices and Consumer Protection Laws.

109.    Defendants' use of a knock-off copy of LNC's distinctive trade dress in the promotion, advertising, distribution and sale of that knock-off copy is taking place within the State of Louisiana and constitutes trade dress infringement prohibited by the Louisiana Unfair Trade Practices and Consumer Protection Laws.

110.    Defendants' false and misleading advertisements, made in the State of Louisiana in the course of their business, concerning the availability of their rinse cup is a false and misleading statement regarding a material fact affecting a consumer's decision to purchase rinse pails.  Those false and misleading advertisements are broadcast over the internet within the State of Louisiana and are unfair and deceptive practices prohibited by the Louisiana Unfair Trade Practices and Consumer Protection Laws.

111.    Defendants' use of a knock-off copy of LNC's distinctive trade dress in a bait-and-switch scheme whereby consumers are offered the knock-off copy over the internet broadcast in Louisiana but when they order the knock-off copy they are shipped a different and inferior product constitutes a false representation and unfair and deceptive practice in violation of the Louisiana Unfair Trade Practice and Consumer Protection Law.

112.    Plaintiff LNC has been and continues to be damaged by Defendants' unfair and deceptive practices in an amount to be determined at trial.

113.    Upon information and belief, Defendants' conduct is willful, deliberate, intentional and in bad faith.

114.    By reason of the foregoing acts, Defendants have caused, and unless enjoined will continue to cause, irreparable harm to Plaintiff LNC.

115.    Plaintiff LNC has no adequate remedy at law to address these injuries.

**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment Action)**

116.    Plaintiff LNC repeats and realleges each and every allegation contained in the foregoing paragraphs 1 through 115 as if fully set forth herein.

117.    LNC does not directly or indirectly infringe the '675 or '895 patents either literally or under the doctrine of equivalents.  LNC does not induce others or contribute to the infringement of the '675 patent.

118.    Upon information and belief, the '675 and '895 patents are unenforceable.

119.    Defendants have threatened LNC and upon information and belief have threatened LNC's customers with infringement of the '675 and '895 patents.  Defendants have a history of filing infringement suits seeking to enforce their patents.  LNC infringes no valid claim of either of the '675 and '895 patents.  Based on Defendants' threats and litigation history, LNC has a reasonable apprehension of it or its customers being sued over the '675 and '895 patents.  An actual, immediate, substantial and justiciable controversy exists regarding the alleged infringement and unenforceability of the '675 and '895 patents.

120.    A judicial declaration is necessary and appropriate at this time in order that LNC may ascertain its rights and duties with respect to the '675 and '895 patents.

**REQUEST FOR RELIEF**

Wherefore, Plaintiff LNC respectfully requests that the Court enter judgment as follows:

A.    That Defendant violated Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) and the Louisiana Unfair Trade Practice and Consumer Protection Law;

B.  That an Order be entered declaring Defendants SCP and McGinley constitute a single business enterprise under Louisiana Law;

C.  That an Order be entered preliminarily and permanently enjoining Defendants SCP and McGinley from further copying of LNC's distinctive trade dress, from using LNC's distinctive trade dress in promoting, advertising, distributing, offering for sale or selling any product using or incorporating LNC's distinctive trade dress;

D.  That an Order be entered preliminarily and permanently enjoining Defendants SCP and McGinley from importing, distributing, advertising, promoting or selling in the United States rinse cup products infringing LNC's trade dress;

E.  That an Order be entered preliminarily and permanently enjoining Defendants SCP and McGinley from disseminating or causing the dissemination of the false advertising, statements, claims and representations alleged herein;

F.  That an Order be entered preliminarily and permanently enjoining Defendants SCP and McGinley from disseminating or causing the dissemination of claims or statements, or any colorable variations thereof, in any packaging, advertising or other promotional materials that its rinse cup is available at retailers where it is not available;

G.  That an Order be entered preliminarily and permanently enjoining Defendants SCP and McGinley from disseminating or causing the dissemination of any false or misleading claims, representations or statements, or any colorable variations thereof, in any packaging, advertising or other promotional materials;

H.      That an Order be entered preliminarily and permanently enjoining Defendants SCP and McGinley from using, advertising, promoting, offering for sale or selling in the United States a rinse cup product that infringes LNC's trade dress in a bait-and-switch scheme whereby customers who order the knock-off copy are shipped and sold an inferior and different product;

I.      That an Order be entered directing an accounting by Defendants SCP and McGinley of their gains, profits, savings, and advantages realized by reason of their false advertising and false representations, awarding Plaintiff LNC damages to the fullest extent allowed by law, and trebling LNC's recovery pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117 and the Louisiana Unfair Trade Practice and Consumer Protection Law;

J.      That an Order be entered awarding actual and punitive damages to Plaintiff LNC as proven at the trial of this action in accordance with Louisiana Unfair Trade Practice and Consumer Protection Law;

K.      A declaration that the '675 or '895 patents are unenforceable;

L.      A declaration that LNC has not and does not infringe any valid claim of the '675 or '895 patents;

M.      A declaration that the case is exceptional within the meaning of the 35 U.S.C. § 285;

N.      That an Order be entered granting Plaintiff LNC its costs and disbursements in this action, including its reasonable attorneys' fees; and

O.      All such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38, Federal Rules of Civil Procedure, Plaintiff LNC demands trial by jury in this action of all issues so triable.

Respectfully submitted this 10th day of May, 2016.

/s/ Joe D. Guerriero
Joe D. Guerriero
Louisiana State Bar Roll No.:  06391
E-Mail:  JoeD@nuby.com
3030 Aurora Avenue
Monroe, LA 71201
Telephone:  (318) 338-3603
Facsimile:   (318) 388-5892

Admission Pro Hac Vice Requested
Robert M. Chiaviello, Jr.
Texas State Bar No. 0249120
E-Mail:  bobc@nuby.com
3030 Aurora Avenue
Monroe, LA 71201
Telephone:  (318) 410-4012
Facsimile:   (318) 388-5892


Admission Pro Hac Vice Requested
Hartwell P. Morse, III
Illinois State Bar No. 6199527
E-Mail:  hartm@nuby.com
3030 Aurora Avenue
Monroe, LA 71201
Telephone:  (318) 338-3108
Facsimile:   (318) 388-5892

Attorneys for Plaintiff Luv n' Care, Ltd.